# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JAY BLAHNIK INC.,<br>　　　Plaintiff,<br><br>　　v.<br><br>WATERROWER, INC.,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　C.A. No. 1:21-CV-00026-MSM-PAS<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court are two motions pending in a copyright infringement lawsuit initiated by the plaintiff, Jay Blahnik, Inc. ("JBInc.") against WaterRower, Inc. ("WaterRower").    JBInc. has moved to dismiss and/or strike WaterRower's counterclaims for breach of contract and declaratory judgment. WaterRower has moved for judgment on the pleadings. For the following reasons, the Motion for Judgment on the Pleadings (ECF No. 20) is DENIED and the Motion to Dismiss and/or Strike (ECF No. 15) is GRANTED.

## I. BACKGROUND

JBInc. is California-based corporation that creates, among other things, "rowing techniques and tutorials in various media in connection with" certain

registered trademarks. (ECF No. 1 ¶¶ 1, 5.) WaterRower is a Rhode Island corporation that manufactures rowing machines and fitness equipment. (*Id.* ¶¶ 2, 6.)

### A. JBInc.'s Rowing Manual and Video

JBInc. developed and released its "Indo-Row Instructor Training Manual" ("Indo-Row Manual") in December 2007, which it describes as "teach[ing] an original method of rowing on a rowing machine . . . ." *Id.* ¶ 7. The Indo-Row Manual, according to JBInc., eases the learning curve for rowing on a machine. *Id.* ¶ 8. JBInc. has dubbed its strategy the "3x3 philosophy" ("3x3"). *Id.*

> [The Indo-Row Manual] breaks down the rowing stroke according to a '3x3 philosophy' in which (1) the order of the rower's movements is legs, core, then arms; (2) the power of the rower's movements is distributed 60% to the legs, 20% to the core, and 20% to the arms; and (3) the timing of the stroke is one count out to two counts in.

*Id.* JBInc. obtained a copyright for 3x3 in November 2020. *Id.* ¶ 9. In addition to the Manual, JBInc. also created a six-minute 3x3 video tutorial ("Indo-Row Video") which it published on December 31, 2011. *Id.* ¶ 10. The Indo-Row Video features Jay Blahnik and Joshua Crosby providing rowing instructions and demonstrations based on the Manual and demonstrating common mistakes made by rowers. *Id.* JBInc. registered its Indo-Row Video with the United States Copyright Office in December 2020. *Id.* ¶ 11.

### B. JBInc. and WaterRower Licensing Agreement and Present Litigation

Between 2013 and September 2017, JBInc. and WaterRower were parties to a licensing and commission agreement ("License Agreement") through which "JBInc. granted WaterRower the exclusive, worldwide right to use certain intellectual

property owned by JBInc. in connection with the manufacture, promotion, distribution, and sale of rowing machines manufactured and/or sold by WaterRower." *Id.* ¶ 14. With the License Agreement set to terminate, JBInc. sent a letter in August 2017 advising WaterRower that it would need to stop distributing and/or selling JBInc. videos and to stop using intellectual property, including the Indo-Row Manual and Indo-Row Video, when the License Agreement expired. *Id.* ¶ 16. WaterRower agreed. *Id.* ¶ 17-18.

JBInc. and WaterRower's relationship, however, did not end in September 2017. Several years later, in July 2020, JBInc. wrote again to WaterRower, this time to inform WaterRower that its "WaterRower: How to Row" video ("How to Row Video") infringes JBInc.'s copyrighted Indo-Row Manual and Indo-Row Video (together "Indo-Row Works") and to demand the How to Row Video be removed from YouTube, Vimeo, and any other video-hosting websites. *Id.* ¶ 22. According to JBInc., WaterRower's video is substantially similar to the Indo-Row Works and "pirates the principles, terminology, techniques and delivery embodied by the Indo-Row Works . . . ." *Id.* ¶ 21. WaterRower refused to remove its How to Row Video. *Id.* ¶ 23. JBInc., having obtained copyright registrations for the Indo-Row Works, filed complaints with YouTube and Vimeo alleging copyright infringement. *Id.* ¶ 24-26.

JBInc. also filed a two-count complaint in this Court alleging copyright infringement of the Indo-Row Manual and Indo-Row Video. *Id.* ¶ 28-39. The plaintiff seeks injunctive relief, damages, an order requiring WaterRower to remove "any and all WaterRower videos that are substantially similar to [JBInc.'s] copyrighted

3

materials, including but not limited to the Indo-Row Works," and an order requiring WaterRower to return all copies of the How to Row Video as well as any other documents or electronically stored data "that are substantially similar to Plaintiff's copyrighted materials . . . ." *Id.*

### C. WaterRower's Counterclaims

WaterRower answered the Complaint and asserted fourteen affirmative defenses and two counterclaims: Count I for breach of contract and Count II seeking a declaratory judgment to enforce a settlement agreement between the parties. (ECF No. 14.) Referring to a separate 2017 lawsuit filed against WaterRower by JBInc. in Rhode Island Superior Court, WaterRower details the earlier litigation and the settlement agreement reached in the state court action. That lawsuit centered on dispute over certain commission payments and WaterRower's use of JBInc.'s Indo-Row Works related to the parties' 2013 License Agreement. *Id.* ¶ 17. It was during the state court litigation that WaterRower released its How to Row Video.[1] Several months later, in October 2019, JBInc. and WaterRower agreed to participate in mediation and in January 2020 the parties entered into a settlement agreement ("Settlement Agreement"). The Settlement Agreement contained a release of claims that JBInc. may have had against WaterRower that were

> known or unknown, foreseen and unforeseen, which [JBInc.] Releasors ever had, now has or shall ever have against WaterRower Releasees, whether or not asserted, which in any way concerns or is related to the 2013 License/Commission Agreement and/or any prior

---

[1] WaterRower posted the How to Row Video on Vimeo on February 29, 2019, and on YouTube on March 1, 2019. ECF No. 14 ¶ 23.

> agreements with or between the Parties, and any and all
> claims of allegations of liability and/or damages alleged, or
> that could have been alleged, in the Lawsuit.

*Id.* ¶ 27.  WaterRower's counterclaims are based on the language of the release.  It challenges JBInc.'s Complaint on the basis that the copyright infringement claims were among those released as part of the Settlement Agreement because they "existed before the execution of the parties' 2020 Settlement Agreement and were, or could have been, asserted – in one form the other – during the parties' prior litigation."  *Id.*

### D. JBInc.'s Motion to Dismiss

JBInc. has moved to dismiss and/or strike WaterRower's counterclaims.  First, under Fed. R. Civ. P. 12(b)(6), JBInc. maintains that WaterRower has failed to state a claim for relief because a release is an affirmative defense, not an independent claim. (ECF No. 15 at 2.)  Second, it argues that WaterRower has already raised the release as one of its affirmative defenses and, as a result, its counterclaim seeking a declaratory judgment to enforce the release is redundant and should be struck pursuant to Fed. Rule Civ. P. 12(f).

WaterRower opposes dismissal of its breach of contract claim and argues that more than a release, the Settlement Agreement terms amount to a covenant not to sue and that by initiating the present lawsuit JBInc. has breached that covenant and opened the door for WaterRower to assert an independent claim for breach of contract. (ECF No. 16 at 1.)  WaterRower acknowledges, however, that enforcement of the release may be "more appropriately pleaded as an affirmative defense . . . ."  *Id.* at 3.  WaterRower nevertheless urges the Court to ignore the absence of "covenant

not to sue" in the Settlement Agreement and not "to draw a bright line distinction between a 'release' and 'covenant not to sue' . . . ." *Id.* at 8.  With respect to Count II, seeking declaratory relief, WaterRower makes no discernable argument against dismissal.

### E. WaterRower's Motion for Judgment on the Pleadings

Whether the Court needs to address the Motion to Dismiss depends, however, on whether it grants the defendant's Motion for Judgment on the Pleadings (ECF No. 20).  If WaterRower is entitled to judgment on the pleadings, then JBInc.'s Motion to Dismiss and/or Strike becomes moot.

In support of its Motion for Judgment on the Pleadings, WaterRower contends that JBInc. is attempting "to claim exclusive rights in the *principles* and *techniques* for achieving the ideal rowing stroke." (ECF No. 20-1 at 6.)  WaterRower suggests to the Court that JBInc. cannot maintain a copyright infringement claim over facts or ideas and that any parallels between the How to Row Video and the Indo-Row Works only amount to commonly used words or phrases and expressions that are necessary to communicate rowing fundamentals, which are not entitled to copyright protection. *Id.*  The essence of WaterRower's Motion is that JBInc. has failed, as a matter of law, to establish the requisite similarity between the How to Row Video and the Indo-Row Works to sustain its claim for copyright infringement.

### F. The Indo-Row Works and the How to Row Video

The copyright registrations submitted by JBInc. cover both the Indo-Row Manual (ECF No. 1-2) and the Indo-Row Video (ECF No. 1-3).  The Indo-Row Manual

includes a description and graphics of JBInc.'s 3x3 philosophy and lays out its three-element equation for learning the proper stroke for rowing: Legs = 60%; Core = 20%; Arms = 20%. (ECF No. 1-1.)  It also instructs rowers to use a three-count pace for each stroke: one count for the pull or drive and two counts for the return or recovery. *Id.*

JBInc.'s Indo-Row Video provides live-action instruction that mirrors the Indo-Row Manual, emphasizing the order of the stroke, the appropriate posture to assume, the necessary force to be exerted, and the most effective pace for each movement on the rowing machine.  Indo-Row Video is about six minutes long and features a rower, Mr. Crosby, and an instructor, Mr. Blahnik, kneeling beside the rowing machine. WaterRower's How to Row Video is also six minutes long and features a rower, Will Satch, and an instructor, Ben Scarles, kneeling beside the rowing machine.  The background in the Indo-Row Video resembles a loft with brick walls and a large window, while the How to Row Video features several folded rowing machines and a wall of vegetation.

Each video begins with an introduction by the respective instructors and then proceeds to an overview of the tutorial.  The Indo-Row Video then highlights the three portions of JBInc.'s 3x3 program – order, power, and timing.

### 1. Order

While Mr. Crosby demonstrates a few strokes on the rowing machine, Mr. Blahnik explains that there is a particular order involved in executing a rowing stroke – legs first, then core, then arms.  (ECF No. 1-6 at 2.)  In the How to Row Video,

7

Mr. Scarles narrates as Mr. Satch demonstrates the finish position, then the recovery position, then the catch position, and then the drive position – essentially demonstrating the elements of a stroke in reverse – and describes the "distinct order" of a stroke.  *Id.*  That distinct order, according to the How to Row Video is: "arms, core, legs." *Id.*  Both videos also demonstrate the same types of mistakes that rowers make when they fail to perform the stroke movements in order. *Id.*

### 2. Power

Next, the Indo-Row Video and How to Row Video detail the power needed for each rowing movement.  In the Indo-Row Video, Mr. Blahnik explains that a rower's energy should be broken into three parts: "60% of the power in your legs, 20% in your core, and 20% in your arms.  So think 60-20-20." *Id.* at 3.  Similarly, the How to Row Video instructs viewers to row with "legs doing 60%, core doing 20%, and then the arms last of all doing the last 20%." (ECF No. 20-4, Exhibit D.)  Again, both videos provide examples of mistakes made by rowers, this time with respect to the particular muscle groups rowers should use to generate power with the Indo-Row Video advising against "trying to do all of the work with their arms" and the How to Row Video cautioning against "generat[ing] too much power from the arms . . . ." (ECF No. 1-6 at 4.)  The instructor in the Indo-Row Video reminds viewers that "[i]t should feel like you're rowing with 60-20-20, and it should look like you're rowing with 60-20-20" while the How to Row Video emphasizes that "you want 60% legs, 20% core, and 20% arms" respectively.  *Id.*

### 3. Timing

In the third and final segment of the Indo-Row Video, Mr. Blahnik describes the appropriate pace of each rowing movement as "a 3-count movement . . . 1 out, 2 counts in." *Id.* Mr. Blahnik warns that "even if you're rowing faster, you still want to protect that ratio of 1, 2, 3." *Id.* At roughly the same point in the How to Row video, viewers are instructed to maintain a 2:1 ratio. "For every second on the drive, take two seconds for the recovery . . ." and no matter how "fast you're trying to row, it's important to maintain that 2:1 ratio within the stroke." *Id.*

### 4. Wrap Up

Each video concludes with a summary. In the Indo-Row Video, Mr. Blahnik emphasizes "the 3 most important things. Get the order right. Legs, core, arms. Get the power right. 60-20-20. Legs, core, arms. And then get the timing right. 1 [count] out on the drive and 2 [counts] coming in on the recovery." *Id.* at 5. "[T]o get the most out of your rowing workout," the How to Row Video advises rowers to focus on

> [o]ne, the order in which the rowing stroke should be executed. Arms, core, legs. Two, the way in which you should apply the power. 60% in the legs, 20% in the court, and 20% in the arms. And three, the timing. One second on the drive and two seconds on the recovery.

*Id.*

### 5. Alleged Similarity

According to the Complaint, WaterRower's How to Row Video "pirates the principles, terminology, techniques, and delivery embodied by the Indo-Row Works . . . ." (ECF No. 1 ¶ 21.) WaterRower points out that its video does not include images or charts from the Indo-Row manual and does not include any reference to "3x3."

(ECF No. 20-1 at 4.)  Because WaterRower's How to Row Video and JBInc.'s Indo-Row Video portray "well-known" techniques and principles and ideas, WaterRower suggests that their similarity is of no moment and cannot sustain a copyright infringement claim.  *Id.* at 6.  JBInc. focuses instead on the "creative choices" it made when developing the Indo-Row Works including "creat[ing] a memorable learning framework . . . Order, then Power, then Timing," which it then "broke . . . down into an easily understandable three-point lesson, specifically [1] legs-core-arms, [2] 60-20-20, and [3] 1 count out, two counts in" during "a video of approximately six minutes in length."  (ECF No. 23 at 7.)  JBInc. also stresses that it used certain words like "core" instead of "body," expressed power or effort by using the 60-20-20 percentages and paced each stroke using "counts" rather than a "ratio."  *Id.* at 8.  According to JBInc., the Indo-Row Works contain original constituent elements which have been copied in WaterRower's six-minute How to Row Video.  *Id.* at 10.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Standard: Judgment on the Pleadings

"Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'"  *Zipperer v. Raytheon Co., Inc.*, 493 F.3d 50, 53 (1st Cir. 2007) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006)).  "The Court considers a motion for judgment on the pleadings under Rule 12(c) according to the same standard by which it decides a Rule 12(b)(6) motion."  *Am. States Ins. v. LaFlam*, 808 F. Supp. 2d 400, 403 (D.R.I. 2011) (citing *Burns v. Conley*, 526 F. Supp. 2d 235, 241

(D.R.I. 2007)).  As such, the Court "view[s] the facts contained in the pleadings in the light most flattering to the nonmovant[] . . .  and draw[s] all reasonable inferences therefrom in [its] favor." *Aponte-Torres*, 445 F.3d at 54 (citing *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)).

## B. Discussion: Judgment on the Pleadings

The defendant's Motion for Judgment on the Pleadings is focused on the alleged absence of the requisite similarity between the WaterRower and JBInc. works.  WaterRower argues that "a simple comparison of the protected elements of the Indo-Row Works and the allegedly infringing 'How to Row' Video . . . establishes that the works are not 'substantially similar' and there can be no infringement finding." (ECF No. 20-1.)[2]  The crux of WaterRower's argument is that once the portions of the Indo-Row Works that are not protected by copyright are set aside, the remaining portions of the work bear no substantial resemblance to one another.  But

---

[2] "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). Nevertheless, "[i]n reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to the plaintiffs' claim; [and] documents sufficiently referred to in the complaint." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 199)) (alterations in original).  Although the How to Row Video and Indo-Row Video were not appended to the Complaint, WaterRower has submitted copies of both to the Court and during oral argument on March 3, 2022, JBInc. acknowledged their authenticity and consented to the Court's review of the videos in connection with the Motion for Judgment on the Pleadings.

before the Court reaches that argument, a few preliminary steps in the copyright infringement framework must be taken.

### 1. Copyright Ownership

For JBInc. "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). As to the first element, WaterRower does not dispute the validity of the plaintiff's copyright at this point.

### 2. Copying Constituent Elements

To establish the second element, a plaintiff must prove two things: first, "that the defendant actually copied the work as a factual matter, either through direct evidence or though indirect means" and second, "that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar." *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 108 (1st Cir. 2006)(citations omitted) (internal quotation marks omitted).

With respect to actual copying, a plaintiff may "adduc[e] evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying." *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir. 2005) (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)). Here, it is undisputed that the WaterRower had access to the Indo-Row Video.

With access undisputed, the next inquiry focuses on whether there is a "sufficient degree of similarity" or "probative similarity," which "is somewhat akin to, but different than, the requirement of substantial similarity that emerges in the [next] step of the progression." *Id.* Once "probative similarity" is established, "[t]he substantial similarity requirement focuses holistically on works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression." *Id.* (citing *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001)). Courts employ the "ordinary observer" test to assess substantially similarity. *Id.* The test is whether "an ordinary person of reasonable attentiveness would, upon listening to both [works], conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." *Id.* (citing *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 607 (1st Cir. 1988)).  In this case, the question is whether an ordinary person viewing the Indo-Row Video and How to Row Video, would find that WaterRower "unlawfully appropriated [JBInc.'s] protectable expression." *Id.*

### 3. Similarity Analysis

To determine whether probative and substantial similarity exist between two works and to apply the "ordinary observer" test, the protectible elements of the work must be separated from the unprotectible elements because "[t]he mere fact that a work us copyrighted does not mean that every element of the work may be protected." *Id.* at 19 (quoting *Feist*, 499 U.S. at 348) (alteration in original) (internal quotation marks omitted).

JBInc. has supplied the Court with portions of the Indo-Row Manual as well as a partial transcript of the Indo-Row Video and How to Row Video. WaterRower has provided its own partial transcript along with digital copies of both videos. The Court has duly reviewed these submissions. Because WaterRower does not deny that it had access to the Indo-Row Video and Indo-Row Manual, whether actual copying occurred depends on whether there is probative similarity between the Indo-Row Works and the How to Row.

Here, again, WaterRower appears not to dispute that the How to Row Video provides instruction that corresponds in many ways to the Indo-Row works. WaterRower points out that the physical setting, instructors, and rowers differ between the two tutorials. The How to Row Video uses language, organization, and examples that are similar to those found in the Indo-Row Video. The Court notes that the How to Row Video's instructor, Mr. Scares, uses many of the same terms and phrases that are found in the Indo-Row Works. For example, the Indo-Row Video expresses the order of rowing as one of the stumbling blocks for new rowers. In it, Mr. Blahnik explains that "[m]any people believe that the legs, the core, and the arms all push and pull at one time . .  but . . . it's actually a linear progression." (ECF No. 1-6 at 2.) This language also reflects the 3x3 chart in the Indo-Row Manual. In parallel, Mr. Scarles explains in the How to Row Video that "[m]ost people when they start to row get it slightly wrong by thinking that the arms, the core, and the legs all move at the same time, where in fact there is a particular order." *Id.* In the second section of the Indo-Row Video, Mr. Blahnik articulates the effort required for rowing

14

as "60-20-20" referring to "60% of the power in your legs, 20% in your core, and 20% in your arms." *Id.* at 4, 5.  The How to Row Video contains a corresponding section describing the order and "power distribution" of rowing as "60% legs, 20% core, and 20% arms." *Id.* at 4.  WaterRower seems to acknowledge these and other similar elements while qualifying them as "facts" or "ideas" that "are not copyrightable." (ECF No. 21-1 at 15.)

The First Circuit has acknowledged that the probative similarity and substantial similarity inquiries may "merge[] somewhat." *T-Peg, Inc.*, 459 F.3d at 112.  To determine whether there is probative, and then substantial, similarity between the works, the Indo-Row elements that are not protectible by copyright must be disregarded. "The inquiry focuses not on every aspect of the plaintiff's work, but on those aspects of the plaintiff's work [that] are protectible under copyright law laws and whether whatever copying took place appropriated those [protected] elements." *Id.* (quoting *Johnson*, 409 F.3d at 18) (internal quotation marks omitted) (alterations in original).  Once isolated, the "ordinary observer" test may be applied to determine whether the average viewer would find that WaterRower "unlawfully appropriated" JBInc.'s "protectable expression." *Id.* (quoting *Johnson*, 409 F.3d at 19).

WaterRower parses and qualifies many portions of the Indo-Row Works in an effort to eliminate all of the Indo-Row Works' allegedly protectible elements.  First, it contends that JBInc. seeks to use its copyright to "prevent others from practicing or teaching certain physical movements, which naturally result in output of power from the human body that leads to an ideal rowing stroke."  (ECF No. 20-1 at 15.)

15

In support of its argument, WaterRower directs the Court to the Ninth Circuit's decision in *Bikram's Yoga College of India v. Evolation Yoga, LLC*, 803 F.3d 1032 (9th Cir. 2015).   There, the district court granted, and the court of appeals affirmed, summary judgment in the defendant's favor after concluding that the plaintiff's "sequence of twenty-six [individual yoga poses] and two breathing exercises, arranged in a particular order…" practiced "in a room heated to 105 degrees Fahrenheit to simulate [the plaintiff's] native Indian climate" was "not entitled to copyright protection."   *Id.* at 1035-36.   WaterRower urges this Court to follow the Ninth's Circuit footsteps and find that JBInc. is attempting to copyright "an idea, process, or system . . ." similar to the plaintiff in *Bikram's Yoga College*. *Id.* at 1036.

Pursuant to 17 U.S.C. § 102(b) there is no "copyright protection for . . . any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, or embodied . . . ."   That fundamental rule, however, must be understood in light of the "idea/expression dichotomy . . . ." *Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 61 (1st Cir. 2009) (citing *Feist*, 499 U.S. at 344).   As the First Circuit emphasized, "*descriptions* of a process or system are copyrightable, but the underlying process or system itself is not."   *Id.* (citing *Matthews v. Freedman*, 157 F.3d 25, 27 (1st Cir. 1998)) (emphasis in original).   In *Situation Mgmt.*, the court explained that "to the extent that SMS's works teach a process or system for effective communication and negotiation, others may freely describe that process or system by using their own

original expression.   But others may not appropriate SMS's expression when describing that process or system." *Id.* Bearing this in mind, the mere "fact that [JBInc.'s] works describe processes or systems does not make their *expression* noncopyrightable." *Id.* (emphasis in original).

JBInc. argues that is not attempting to copyright an idea, but rather to protect its allegedly unique presentation of that idea.   WaterRower challenges JBInc.'s expression as limited only to the words used in the Indo-Row Works because Water-Rower has not "copied any other expressive element – such as visual elements or graphics – from the Indo-Row Works." (ECF No. 20-1 at 16.)[3]   Those words and phrases, WaterRower argues, are not the same or similar.   Despite that argument, WaterRower offers only one example of differing terminology.

> Whereas WaterRower describes the timing of the stroke as "one, one, two, one, one, two, one, one, two," the Indo-Row video describes it using "one, two, three, one, two, three." Notably, WaterRower did not use the "power, patience, patience" description [used in the Indo-Row Video] that could arguably be considered a creative way to express the one-to-two timing ratio.

*Id.* at 19.

WaterRower then pivots and contends that "the only purported similarities offered by JBInc. are words and short phrases, which copyright law does not protect." *Id.* Identifying words like "power," "60 percent," "20 percent," and "arms," WaterRower acknowledges their presence in both the Indo-Row Works and the How

---

[3] WaterRower also emphasizes that the videos feature different rowers, instructors, and orientations of the rowing machines and suggests that "it has created its own, unique presentation to explain the ideal rowing technique on an ergometer." (ECF No. 20-1 at 16-17.)

to Row Video but calls its own use of those terms "unremarkable" because the works are intended to convey the same ideas. *Id.* at 20. "[W]hile the [First Circuit] and the Copyright Office have generally recognized that short phrases may not be subject to copyrightability . . . applicability of this law very much turns on the specific short phrases at issue, as not all short phrases will automatically be deemed uncopyrightable . . . ." *Society of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29 (1st Cir. 2012) (citations omitted).[4]  The guiding principle, according to the First Circuit is that "context matters." *Id.*  Here, WaterRower takes each of the above-referenced words and phrases *out* of context.

---

[4] Along similar lines, WaterRower argues that "where identity or similarity of language does exist between the Indo-Row Works and the WaterRower 'How to Row' Video, it occurs only because the expression merges with the idea being conveyed." *Id.* at 20.  The First Circuit has explained the merger doctrine in the following manner:

> Some ideas admit of only a limited number of expressions. When there is essentially only one way to express an idea, the idea and its expression are inseparable and copyright is no bar to copying that expression. [Even] [w]hen the idea and its expression are not completely inseparable, there may still be only a limited number of ways of expression the idea.

*Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 35-36 (1st Cir. 2001) (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606 (1st Cir. 1988)) (alterations in original).  The merger doctrine, however, applies only after the work has been "dissect[ed] . . . to remove those aspects not covered by copyright." *Id.* at 34.  Once "those features which are protected" have been identified, then "the doctrines of merger and scene-a-faire [are applied] to determine *how* 'substantially similar' the copy must be to infringe." *Id.*  Here, that inquiry is premature.  WaterRower makes an argument in favor of the merger doctrine based on discretely listed words, to the exclusion of the context in which they are used.

As noted above, a determination of copyright infringement requires "original expressive elements" to be separated from "unprotected content." *LovePop, Inc. v. PaperPopCards, Inc.*, 286 F.Supp. 3d 283, 288 (D.Ma. 2018) (citing *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009)).   In undertaking this task, however, "the court should not lose sight of the forest for the trees . . . it should take pains not to focus too intently on particular unprotected elements at the expense of a work's overall protected expression." *Id.* (quoting *Coquico*, 562 F.3d at 68).   Despite WaterRower's attempts to dismantle the Indo-Row Works and reduce them to a collection of disconnected words and phrases inextricably linked to the sport of rowing, the Court has not lost sight of the forest.

In its Motion, WaterRower seeks to persuade the Court that substantial similarity can and should be decided at the pleading stage in this case.   The determination of the requisite similarity to sustain a claim of copyright infringement, however, demands a factual determination and, as one court put it, such a "determination . . . presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." *Larson v. Perry*, C.A. No. 19-cv-10203-IT, 2021 WL 2352375, at *3 (D. Mass. Feb. 2, 2021) (quoting *Skinder-Strauss Assocs. V. Mass. Continuing Legal Educ., Inc.*, 914 F.Supp. 665, 677 (D.Mass. 1995)).

Judgment on the pleadings may be granted only when the "facts conclusively establish the movant's entitlement to a favorable judgment." *Zipperer*, 493 F.3d at 53 (quoting *Aponte-Torres*, 445 F.3d at 54) (internal quotation marks omitted).   The

Indo-Row Works, and in particular the Indo-Row Video, and the How to Row Video share many common elements, including the same or similar language presented in the same or similar order, and, viewing the facts in the light most favorable to the non-movant, as is required this point, the Court concludes that "[w]hile these similarities do not necessarily demand a finding of substantial similarity, the similarities that exist would form a sufficient basis from which a reasonable jury could draw that inference." *Larson*, 2021 WL 2352375, at *3. WaterRower essentially asks the Court to completely deconstruct the Indo-Row Works and to find, at this preliminary stage, that they contain nothing copyrightable. The Court declines to do so. The defendant's Motion for Judgment on the Pleadings (ECF No. 20) is DENIED.

### III. MOTION TO DISMISS

Because the Court finds that WaterRower is not entitled to judgment on the pleadings, it now turns to JBInc.'s Motion to Dismiss and/or Strike the defendant's counterclaims (ECF No. 15). Although WaterRower asserted a claim seeking a declaratory judgment to enforce the Settlement Agreement that resulted from an earlier state court action, WaterRower has presented no argument in opposition to the plaintiff's Motion to Strike Count II of WaterRower's counterclaims. Finding that portion of JBInc.'s Motion unopposed, the Court GRANTS the plaintiff's Motion to Strike Count II for declaratory relief.

#### A. Standard: Motion to Dismiss

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the [complainant] the benefit of all reasonable inferences therefrom."

*Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed in toto to render [complainant's] entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 569 n.14).

## B. Discussion: Motion to Dismiss

In response to JBInc.'s copyright infringement claims, WaterRower has asserted a counterclaim for breach of contract based on a release contained in the Settlement Agreement that the parties executed in connection with an earlier state court action involving the 2013 License Agreement between JBInc. and WaterRower and its associated commission payments.  (ECF No. 14 ¶ 17.)  WaterRower alleges that "JBInc. breached the 2020 Settlement Agreement by bringing claims against WaterRower in the instant lawsuit that it previously released under the terms of the 2020 Settlement Agreement." *Id.* ¶ 42.  Notably, WaterRower has also asserted the release as its thirteenth affirmative defense. *Id.* at 8.

"A release is an affirmative defense; it does not supply a defendant with an independent claim for breach of contract." *Bukuras v. Mueller Group, LLC*, 592 F.3d 255, 265 (1st Cir. 2010) (citing *Melanson v. Browning-Ferris Indus.*, 281 F.3d 272, 276 (1st Cir. 2002)).  WaterRower indeed recognizes that a release is an affirmative

defense, having asserted the very same in its own Answer.  (ECF No. 14 at 8.)  It argues, however, in opposition to dismissal, that the language of the Settlement Agreement release constitutes a covenant not to sue.  (ECF No. 16 at 8.)  WaterRower contends that this alleged covenant not to sue was breached when JBInc. initiated the instant lawsuit.

WaterRower quotes the language of the Settlement Agreement release in its memorandum in opposition to dismissal and even emphasizes the relevant portions for the Court's benefit.  It provides, in relevant part:

> *Jay Blahnink Inc. . . . agree*[s] *to forever discharge and release WaterRower . . . from all claims and demands, actions and causes of actions* [sic]*, grievances, arbitrations, suits, proceedings, charges, debts, controversies, liabilities, and compensation and/or damages of any kind whatsoever, in law or equity, known or unknown, foreseen and unforeseen, which Plaintiff Releasors ever hand, now has or shall ever have against WaterRower Releasees, whether or not asserted, which in any way concerns or is related to the 2013 Licensing/Commission Agreement and/or any prior agreements with or between or involving the Parties, and any and all claims and allegations of liability and/or damages alleged or that could have been alleged, in the Lawsuit.  This release is intended to act as a full and total release of any and all such claims that Plaintiff Releasors may have against the WaterRower Releasees or any entity or anyone connected with them.*

*Id.* at 5-6 (emphasis in original).  Citing a Ninth Circuit decision in which that court considered the terms "release" and "covenant not to sue" and the distinctions, or lack thereof, between them, WaterRower urges this Court to find in this case that "there is no difference between the Release and a covenant not to sue . . . ."  *Id.* at 9.   In *Syerson v. Int'l Bus. Mach. Corp.*, the Ninth Circuit conducted an analysis of the

difference between a release and a covenant and described "the technical distinction between these terms is sometimes more apparent than real." 472 F.3d 1072, 1084 (9th Cir. 2007). In that case, however, and quite unlike the case at bar, the agreement analyzed by the Ninth Circuit *included* both a covenant not to sue as well as a release. Here, WaterRower essentially asks the Court to read into the Settlement Agreement a covenant not to sue where none exists. WaterRower acknowledges as much, conceding that the "Settlement Agreement does not expressly contain the magic words 'covenant not to sue' . . . ." (ECF No. 16 at 8.) The Court finds unpersuasive WaterRower's argument that the Settlement Agreement release should be read as a covenant not to sue.[5]

The Court finds that WaterRower has failed to state a claim for relief for breach of a contract based on a covenant not to sue. The plaintiff's Motion to Dismiss WaterRower's counterclaim for breach of contract is GRANTED (ECF No. 15).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the defendant's Motion for Judgment on the Pleadings (ECF No. 20) and GRANTS the plaintiff's Motion to Dismiss and/or Strike defendant's counterclaims (ECF No. 15).

---

[5] Rule 8(c) of the Federal Rules of Civil Procedure provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . release . . . ." Fed. R. Civ. P. 8(c). WaterRower has asserted the release as an affirmative defense and it may pursue that defense accordingly.

IT IS SO ORDERED,

Mary S. McElroy
United States District Judge
March 29, 2022